IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THE ISLAND GROUP, INC., | ) | CIVIL NO. 13-00094 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SWIMWAYS CORPORATION, PACIFIC | ) | |
| SOUVENIR GROUP, INC., dba | ) | |
| HAWAII INTERCONTINENTAL | ) | |
| CORPORATION, NICHOLAS CORISH | ) | |
| and GERALD SUR, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT SWIMWAYS CORPORATION'S MOTION TO DISMISS AND
DENYING PLAINTIFF'S MOTION TO DISMISS COUNTS II AND III
OF DEFENDANT SWIMWAYS CORPORATION'S COUNTERCLAIM**

Before this Court are: Defendant SwimWays Corporation's

("SwimWays") Motion to Dismiss ("the SwimWays Motion"), filed on

March 18, 2013; [dkt. no. 12;] Plaintiff the Islander Group,

Inc.'s ("TIG") Motion to Dismiss Counts II and III of Defendant

SwimWays Corporation's Counterclaim ("the TIG Motion"), filed on

April 1, 2013; [dkt. no. 28;] Defendant Pacific Souvenir Group,

Inc.'s ("HIC"),[1] joinder in the SwimWays Motion, filed on May 13,

2013; [dkt. no. 45;] and Defendant Gerald Sur's ("Sur") joinder

in the SwimWays Motion, filed on May 13, 2013 [dkt. no. 51]. TIG

and SwimWays each filed a memorandum in opposition on May 13,

_____

[1] Pacific Souvenir Group, Inc. does business as Hawaii
Intercontinental Corporation.

2013.  [Dkt. nos. 48, 49.]  SwimWays and TIG each filed a reply in support of its respective motion on May 20, 2013.  [Dkt. nos. 55, 56.]

These matters came on for hearing on June 3, 2013. Appearing on behalf of SwimWays were James McWhinnie, Esq., and Jonathan Ortiz, Esq., and appearing on behalf of TIG were Christopher Mickus, Esq., and Michelle Comeau, Esq.  Appearing on behalf of HIC was Brian Hiyane, Esq., and appearing on behalf of Sur was Cary Tanaka, Esq.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, the SwimWays Motion is HEREBY GRANTED IN PART AND DENIED IN PART and the TIG Motion is HEREBY DENIED for the reasons set forth below.

<u>**BACKGROUND**</u>

TIG is a Hawai`i company with its principal place of business in Hawai`i.  "TIG is engaged in the business of offering general and recreational merchandise and gift products for sale through mail order, catalogue, the internet and through direct sales to retails" such as Walmart, Kmart, Safeway, KTA Superstores ("KTA"), Amazon.com, and barnesandnoble.com.  [Notice of Removal, filed 2/27/13 (dkt. no. 1), Decl. of James C. McWhinnie ("McWhinnie Removal Decl."), Exh. A ("Complaint") at ¶ 5.]  SwimWays is a Virginia corporation with its principal place of business in Virginia.  It manufactures leisure and

recreational water products, including the COOP Hydro Ball, a neoprene sport ball. HIC distributes SwimWays's COOP products to retailers in Hawai`i. [McWhinnie Removal Decl., Exh. E ("SwimWays Answer") at ¶ 6.] Defendant Nicholas Corish ("Corish") and Sur are HIC sales representatives. [Complaint at ¶¶ 8-9; Defendant Nicholas Corish's Answer to Complaint Filed January 11, 2013, filed 3/6/13 (dkt. no. 9) ("Corish Answer"), at ¶ 6; Defendant Gerald Sur's Answer to Complaint Filed on January 11, 2013 in the Circuit Court of the First Circuit, State of Hawaii, filed 3/4/13 (dkt. no. 7) ("Sur Answer"), at ¶ 1.a.] The Complaint asserts that TIG and SwimWays are competitors in the recreational sports products market, and they attempt to sell their products in many of the same Hawai`i stores. [Complaint at ¶ 11.]

SwimWays sent a letter to TIG on or about August 7, 2012 which asserted that: 1) TIG's "Go Lolo" balls infringed on SwimWays's United States Patent Number 5,997,422 ("the '422 Patent");[2] and 2) other TIG products infringed on SwimWays's trade dress in SwimWays's COOP flying disc and paddle products. [Id. at ¶ 12; SwimWays Answer at ¶ 11.] Almost immediately thereafter, HIC began contacting TIG's customers and informing them either that TIG's "Go Lolo" balls infringed on SwimWays's

---

[2] A copy of the '422 Patent, titled "Waterproof Game Ball", is attached to the SwimWays Answer as Exhibit A. [Dkt. no. 1-6 at 25-33.]

'422 Patent or that TIG was otherwise infringing on SwimWays's patents.  HIC also told TIG's customers that TIG was involved in patent litigation regarding products TIG supplied to its customers.  [Complaint at ¶ 13.]

TIG alleges that, on or about August 15, 2012, Corish informed Robin Cotter, who was a TIG employee at the time, that it was Corish's responsibility to inform stores carrying the TIG's "Go Lolo" balls of the infringement.  Corish stated that he had already left a message about the matter for the KTA buyer.  Around the same time, Cotter also learned from the Kmart department manager that Corish had informed Kmart of the alleged infringement.  On or about August 16, 2012, TIG's sales representative in Hawai`i received an email from the KTA buyer instructing TIG to remove the "Go Lolo" balls from KTA shelves in light of Corish's telephone call.  TIG complied.  Prior to that point, TIG and KTA's business relationship had lasted almost twenty years.  [Id. at ¶¶ 14-18.]  TIG alleges that HIC's sales representatives defamed TIG in the same manner to buyers for Don Quijote and Beach Side Casuals, two of TIG's customers.  [Id. at ¶¶ 19-21.]

TIG denies that it committed the alleged infringement and states that it is not a defendant in any patent litigation with SwimWays.  TIG alleges that the statements by HIC and its employees were false and were made with the intent to harm TIG

4

and/or to interfere with TIG's existing and future business relationships. TIG also alleges that SwimWays and HIC conspired together to defame TIG and interfere with TIG's potential business relationships. [Id. at ¶¶ 22-24.]

On August 20, 2012, TIG sent a letter to SwimWays's counsel demanding that SwimWays and its agents immediately cease and desist from the defamation and interference. [Id. at ¶ 25, Exh. A.] That same day, SwimWays's counsel responded with a letter disavowing any knowledge of or responsibility for Corish's defamatory statements. [Complaint at ¶ 26, Exh. B.]

In an August 22, 2012 letter, counsel for SwimWays denied that Corish was an employee, representative, or agent of SwimWays. [Complaint at ¶ 27, Exh. C.] On August 23, 2012, counsel for TIG sent a letter to HIC demanding that HIC and its employees, including Corish, immediately cease and desist from the defamation and interference. [Complaint at ¶ 28, Exh. D.] In a letter dated August 27, 2012, counsel for HIC denied TIG's allegations, but stated that "HIC instructed its sales team, including Mr. Corish, not to state that the Islander Group is a defendant in a patent infringement lawsuit, and not to state that the Islander Group willfully and illegally copied SwimWays' products." [Complaint at ¶ 29, Exh. E.]

In a September 18, 2012 letter, TIG's counsel informed SwimWays that there was no merit to the claims of alleged

infringement of the '422 Patent and the claims of alleged
infringement of SwimWays's trade dress ("9/18/12 TIG Letter").
[Complaint at ¶ 30, Exh. F.]  After this explanation, and in
light of SwimWays's failure to respond to the 9/18/12 TIG Letter,
TIG believed the matter had been resolved.  According to TIG,
SwimWays continued to interfere with TIG's relationships with its
customers.  [Complaint at ¶¶ 31-32.]  On or about November 28,
2012, SwimWays sent letters to TIG customers, including KTA,
Don Quijote, and Times Supermarkets ("11/28/12 SwimWays
Letters").  The letters stated that SwimWays understood that
those stores purchased, or were considering the purchase of,
products that were similar to SwimWays's COOP products.  SwimWays
stated that its products were protected under federal
intellectual property laws, including the '422 Patent and trade
dress laws.  The letters stated that SwimWays was primarily
pursuing its legal remedies against the companies making the
infringing products, but that SwimWays reserved the right to
pursue remedies against the stores if they continued to purchase
infringing products.  [Id. at ¶ 33, Exh. G (example of 11/28/12
SwimWays Letters).]  TIG asserts that these statements were false
and misleading, and TIG denies committing the alleged
infringement.  TIG acknowledges that the 11/28/12 SwimWays
Letters did not mention TIG by name, but TIG emphasizes that the
letters were sent to TIG customers.  TIG also argues that the

6

letters must be viewed in light of the prior efforts to defame TIG.  After receipt of their 11/28/12 SwimWays Letters, KTA and Don Quijote required TIG to remove all of TIG's products from their stores' shelves.  [Complaint at ¶¶ 34-37.]  KTA's December 3, 2012 email to TIG specifically referenced KTA's 11/28/12 SwimWays Letter.  [Id., Exh. H.]  TIG characterizes SwimWays's infringement claims as "baseless".  [Complaint at ¶ 38.]

The Complaint alleges the following claims: defamation against HIC ("Count I"); defamation against Corish ("Count II"); defamation against Sur ("Count III"); tortious interference with business relations or expectancy against HIC ("Count IV"); tortious interference with business relations or expectancy against SwimWays ("Count V"); conspiracy against HIC and SwimWays ("Count VI"); and unfair methods of competition ("UMOC"), in violation of Haw. Rev. Stat. Chapter 480, against all of the defendants ("Count VII").  The Complaint prays for compensatory and punitive damages, interest, attorneys' fees and expenses, and any other appropriate relief.

SwimWays's Answer asserted, *inter alia*, that TIG's claims were preempted, in whole or in part, by federal law, including the Patent Act, 35 U.S.C. § 1 *et seq.*  [SwimWays Answer at pg. 11.]  SwimWays's Counterclaim alleges that TIG's use of SwimWays's trade dress creates a substantial likelihood that

consumers will be confused by TIG's products and will purchase TIG's products believing they are SwimWays's products. [Id., Counterclaim at ¶ 19.]

SwimWays's Counterclaim alleges the following claims: infringement of the '422 Patent by TIG's Game Balls, in violation of the Patent Act, 35 U.S.C. § 1 et seq. ("Counterclaim Count I"); trade dress infringement and unfair competition by TIG's Flying Disc, in violation of the Lanham Act, 15 U.S.C. § 1125(a) ("Counterclaim Count II"); and trade dress infringement and unfair competition by TIG's Paddle Game, in violation of § 1125(a) ("Counterclaim Count III").

SwimWays's Counterclaim seeks the following relief: preliminary and permanent injunctions against the alleged infringing acts; a judgment that the '422 Patent is valid; judgments that TIG is liable for infringing the '422 Patent and SwimWays's trade dress; a judgment that TIG is liable for unfair competition; an accounting for damages; interest; lost profits and/or a reasonable royalty; a finding that TIG's actions were willful and intentional, warranting an award of enhanced damages pursuant to 35 U.S.C. § 284 and 15 U.S.C. § 1117(a); a finding that this is an exceptional case, warranting an award of attorneys' fees pursuant to 35 U.S.C. § 285, § 1117 or other authority; costs; and any other appropriate relief.

On April 1, 2013, TIG filed its Answer to SwimWays's
Counterclaim, including its own Counterclaim.  TIG asserts the
following: a claim for a declaratory judgment of non-infringement
of the '422 Patent ("TIG's Counterclaim Count I"); and a claim
for a declaratory judgment that the '422 Patent is invalid
("TIG's Counterclaim Count II").  TIG's Counterclaim seeks the
following relief: dismissal of Count I of SwimWays's Counterclaim
with prejudice; a declaratory judgment that TIG did not infringe
the '422 Patent; a declaratory judgment that the '422 Patent is
invalid; a finding that this is an exceptional case, warranting
an award of attorneys' fees pursuant to 35 U.S.C. § 285; and any
other appropriate relief.

I.    **The SwimWays Motion**

In the SwimWays Motion, SwimWays seeks the dismissal of
TIG's claims against SwimWays in Counts V, VI, and VII of the
Complaint.  [SwimWays Motion at 2.]  SwimWays argues that all of
these claims are preempted by federal law because they are based
on actions SwimWays took in a good faith attempt to protect its
intellectual property rights.  In the alternative, SwimWays
argues that these claims are not sufficiently pled.  [Mem. in
Supp. of SwimWays Motion at 1-2.]  SwimWays does not appear to
dispute TIG's submission of the relevant correspondence between
them.  SwimWays acknowledges sending the 11/28/12 SwimWays
Letters, but it emphasizes that the letters do not mention TIG or

TIG's products.  [Id. at 4-5.]

SwimWays asserts that this Court should dismiss Counts
V, VI, and VII because "'federal patent law preempts state-law
tort liability for a patentholder's good faith conduct in
communications asserting infringement of its patent and warning
about potential litigation.'"  [Id. at 8-9 (citations omitted).]
SwimWays notes that a plaintiff's claims will not be preempted if
he pleads, and then proves, that the defendant's actions were in
bad faith, even if bad faith is not an element of the underlying
state law claim.  SwimWays argues that TIG's Complaint does not
sufficiently plead allegations that SwimWays acted in bad faith.
[Id. at 10-12.]

SwimWays acknowledges that paragraph 24 of the
Complaint alleges that SwimWays's claims of infringement were
"baseless".  SwimWays, however, argues that this allegation is
not enough to survive a motion to dismiss because there are no
supporting factual assertions.  TIG has only pled facts showing
that it believed SwimWays's allegations were without merit, but
that is not enough to plead bad faith, even if a court ultimately
finds that the '422 Patent is invalid.  [Id. at 13-14.]

SwimWays therefore alleges that TIG has failed to
sufficiently plead its state law claims against SwimWays, and
SwimWays urges this Court to dismiss Counts V, VI, and VII.

A.     __The TIG Memorandum in Opposition__

       In TIG's memorandum in opposition to the SwimWays
Motion ("TIG Memorandum in Opposition"), TIG emphasizes that a
patentee's right to enforce his patent is not absolute; it is a
conditional privilege that may be lost if the patentee acts in
bad faith while enforcing the patent.   TIG asserts that the
advancement of baseless infringement claims to disrupt a
competitor's business relationships necessarily constitutes bad
faith and negates the conditional privilege.   Asserting
infringement claims with reckless disregard for the accused
party's rights or knowingly making false statements also
constitute bad faith.   [TIG Mem. in Opp. at 7-9.]

       TIG argues that it has pled sufficient allegations of
bad faith.   The Complaint alleges actions by HIC, SwimWays's
distributor, and by Corish and Sur, to disseminate false
information alleging violations of SwimWays's patent and trade
dress rights.   TIG agues that it is plausible that SwimWays
instructed HIC, Corish, and Sur to disseminate the false
information in order to interfere with TIG's business
relationships.   TIG asserts that HIC, Corish, and Sur would have
no incentive to do so if they had not been acting pursuant to
SwimWays's instruction.   TIG points out that Corish stated in his
Rule 16 Scheduling Conference Statement that SwimWays conveyed
the information about the alleged infringement to HIC, and HIC

instructed Corish on what to do with the information in the
marketplace.  TIG also notes that Corish is copied on an email
from one of TIG's customers to TIG about the alleged
infringement, even though Corish had no business relationship
with either TIG or the customer.  [Id. at 9-10 (citing dkt. no.
14, filed 3/22/13, at 2; Complaint, Exh. H).]

TIG also argues that it has sufficiently pled bad faith
because the Complaint asserts that SwimWays knew TIG was not a
defendant in a patent lawsuit and knew TIG was not willfully
infringing SwimWays's intellectual property rights in light of
the 9/18/12 TIG Letter.  At a minimum, the 9/18/12 TIG Letter is
evidence that SwimWays was acting with reckless disregard of
TIG's rights, particularly in light of the fact that SwimWays
never responded to the letter and continued to disparage TIG
after receiving the letter.  [Id. at 10-12.]

TIG contends that a plaintiff does not need to have
tangible, concrete evidence of bad faith in order to survive a
motion to dismiss because such evidence usually will not be
available prior to discovery.  TIG therefore asserts that bad
faith arguments are more appropriate for the summary judgment
stage rather than on a motion to dismiss.  TIG argues that the
relevant case law regarding sufficiency at the pleading stage
supports TIG's position that the Complaint is sufficient.  TIG
also emphasizes that, if it is able obtain discovery confirming

that SwimWays instructed HIC, Corish, and Sur to disseminate false information about TIG, the conditional privilege will not apply because it is only applicable to communications with potential infringers.  [Id. at 13-16.]

Finally, TIG argues that the conditional privilege SwimWays relies upon does not apply to SwimWays's conduct regarding its trade dress rights.  TIG emphasizes that its three claims against SwimWays are based upon both the purported enforcement of SwimWays's patent rights and the purported enforcement of SwimWays's trade dress rights.  TIG need not plead bad faith as to the purported enforcement of SwimWays's trade dress rights.  [Id. at 16-17.]

TIG therefore urges this Court to deny the SwimWays Motion.

**B.    The SwimWays Reply**

In its reply in support of the SwimWays Motion ("SwimWays Reply"), SwimWays contends that, in order to survive a motion to dismiss, TIG had to plead that SwimWays had no reasonable basis to believe that TIG infringed SwimWays's patent rights.  According to SwimWays, TIG did not do this.  SwimWays emphasizes that there is a presumption that, when a patent holder asserts a duly granted patent, it does so in good faith. SwimWays argues that TIG failed to present factual allegations that would support a finding of bad faith; TIG merely asks this

13

Court to infer bad faith.  Neither SwimWays's failure to respond to the 9/18/12 TIG Letter nor the 11/28/12 SwimWays Letters are sufficient to plead bad faith.  SwimWays emphasizes that the 11/28/12 SwimWays Letters did not make derogatory comments about TIG, nor did the letters ask SwimWays's customers to stop selling TIG's products; the decision whether to stop selling the infringing products was left to the customers.  [SwimWays Reply at 2-6.]

As to TIG's argument that bad faith allegations should be tested at the summary judgment stage instead of in a motion to dismiss, SwimWays argues that TIG is not entitled to proceed to the summary judgment stage because TIG failed to sufficiently plead bad faith and therefore did not state a claim upon which relief can be granted.  [Id. at 6-7.]

As to TIG's argument regarding the infringement of SwimWays's trade dress, SwimWays argues that trade dress rights are also protected by the conditional privilege.  Further, SwimWays argues that the same policy rationale allowing good faith patent protection also applies to the protection of other types of intellectual property.  [Id. at 7-8.]

SwimWays therefore urges this Court to grant the SwimWays Motion.

## II.  **The TIG Motion**

In the TIG Motion, TIG argues that this Court should

14

dismiss SwimWays's counterclaims alleging violation of SwimWays's trade dress because they are insufficiently pled.

TIG emphasizes that trade dress encompasses the total image of a product, including, but not limited to, size, shape, color, texture, and graphic design.  Thus, to survive a motion to dismiss, a claim alleging trade dress infringement must plead the character and scope of the trade dress with precision, and must specify whether it is the individual elements that are protectable or the composite effect of the elements as a whole. This is necessary in order to give the defendant sufficient notice of the claim.  [TIG Reply at 3-4.]

TIG argues that this Court must dismiss Counterclaim Count II, regarding SwimWays's Flying Discs, because, although the count alleges the trade dress consists of a certain style and shape, it also alleges the trade dress is not limited to that style and shape.  SwimWays failed to identify with specificity the other styles and shapes covered by the Flying Discs' trade dress.  TIG argues that it should not be forced to guess what is covered by the protectable trade dress.  [Id. at 6.]

TIG argues that this Court must dismiss Counterclaim Count III, regarding SwimWays's paddle products, because the claim does not even describe the paddles' size, shape, color, texture, or graphics.  Like the Flying Disc claim, Counterclaim Count III suggests that there are other unspecified

15

characteristics covered by the trade dress.  In addition, TIG

argues that merely attaching a picture of SwimWays's paddles is

not sufficient to cure pleading deficiencies, and TIG is still

left to guess about the nature of SwimWays's claim.  [Id. at 7-

8.]

TIG therefore urges this Court to grant the TIG Motion

and dismiss Counterclaim Counts II and III.

### A.    **The Swimways Memorandum in Opposition**

In its memorandum in opposition to the TIG Motion

("SwimWays Memorandum in Opposition"), SwimWays argues that

Counterclaim Counts II and III, viewed together with the

exhibits, are sufficient to provide notice to TIG.  If this Court

is inclined to grant the TIG Motion, SwimWays argues that this

Court should give SwimWays leave to amend its Counterclaim.

SwimWays argues that there is no requirement that trade

dress infringement claims be pled with specificity; it is only

required to plead that "its trade dress is (1) non-functional;

(2) either inherently distinctive or has acquired secondary

meaning; and (3) likely to be confused with Islander Group's

products by the consuming public." [SwimWays Mem. in Opp. at 4-5

(citations omitted).]  SwimWays argues that its narrative

descriptions of its flying disc products and paddle board

products, together with the pictures that SwimWays submitted with

its Answer and Counterclaim, are sufficient to put TIG on notice

and to overcome a motion to dismiss.  [Id. at 5-6.]

SwimWays therefore urges this Court to deny TIG's Motion.  If this Court is inclined to grant TIG's Motion, SwimWays argues that this Court should grant leave to amend. [Id. at 9-10.]

On May 13, 2013, HIC filed a joinder in the SwimWays Memorandum in Opposition.  [Dkt. no. 50.]

**B.    The TIG Reply**

In its reply in support of the TIG Motion ("TIG Reply), TIG largely reiterates the arguments in the TIG Motion.  Further, TIG points out that the photographs attached to SwimWays's Counterclaim depict, *inter alia*, six similar, but different paddle products.  The paddles have different colors, features, materials, textures, and graphics.  TIG argues that SwimWays must specify which particular features, or which composite of multiple features, are protectable trade dress.  TIG asserts that SwimWays has failed to do so, and therefore SwimWays's counterclaims do not provide sufficient notice to TIG.  [TIG Reply at 4.]

TIG reiterates that SwimWays failed to describe the elements of the two trade dresses at issue with sufficient specificity.  [Id. at 6.]  TIG notes that SwimWays failed to respond to TIG's argument that SwimWays's use of the phrase "not limited to" renders the alleged trade dress claims too open-ended to withstand a motion to dismiss.  [Id. at 7.]

17

TIG therefore urges this Court to grant the TIG Motion and dismiss Counterclaim Counts II and III.

**STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

> Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). . . .
>
> On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554, 127 S. Ct. 1955).

Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc., 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

> This Court, however, notes that the tenet that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions." Iqbal, 129 S.

Ct. at 1949.  Factual allegations that only permit
the court to infer "the mere possibility of
misconduct" do not show that the pleader is
entitled to relief.  Id. at 1950.

"Dismissal without leave to amend is improper
unless it is clear that the complaint could not be
saved by any amendment." Harris v. Amgen, Inc.,
573 F.3d 728, 737 (9th Cir. 2009) (citation and
quotation marks omitted).

Enriquez v. Countrywide Home Loans, FSB, 814 F. Supp. 2d 1042,

1055 (D. Hawai`i 2011) (some citations omitted).

SwimWays and TIG ask this Court to consider several

exhibits attached to the Complaint, and SwimWays has attached the

Complaint and the exhibits thereto to the SwimWays Motion.  This

district court has recognized that:

When a defendant attaches exhibits to a motion to
dismiss, the court ordinarily must convert the
motion into a summary judgment motion so that the
plaintiff has an opportunity to respond.  Parrino
v. FHP, Inc., 146 F.3d 699, 706 n.4 (9th Cir.
1998).  However, a court "may consider evidence on
which the complaint 'necessarily relies' if: (1)
the complaint refers to the document; (2) the
document is central to the plaintiff's claim; and
(3) no party questions the authenticity of the
copy attached to the 12(b)(6) motion." Marder v.
Lopez, 450 F.3d 445, 448 (9th Cir. 2006).  The
court may treat such a document as "part of the
complaint, and thus may assume that its contents
are true for purposes of a motion to dismiss under
Rule 12(b)(6)." United States v. Ritchie, 342
F.3d 903, 908 (9th Cir. 2003).

Yamalov v. Bank of Am. Corp., CV. No. 10-00590 DAE-BMK, 2011 WL

1875901, at *7 n.7 (D. Hawai`i May 16, 2011).

19

## DISCUSSION

### I.    Preemption of Patent-Based Claims

The first issue presented in the SwimWays Motion is whether TIG's state law claims against SwimWays are preempted by federal patent law because the conduct that forms the basis of those claims purportedly occurred in the course of SwimWays's attempt to enforce its rights under the '422 Patent.

To the extent that this case requires this Court to determine SwimWays's rights under the '422 Patent and whether TIG infringed those rights, the Federal Circuit would have jurisdiction over any appeal in this case.  See, e.g., Aoki v. Gilbert, No. 2:11-cv-02797-MCE-CKD, 2013 WL 1156495, at *4 (E.D. Cal. Mar. 19, 2013).

> The Federal Circuit applies "the law of the
> regional circuit to which the district court
> appeal normally lies unless the issue pertains to
> or is unique to patent law, in which case [the
> Federal Circuit] appl[ies][its] own law to both
> substantive and procedural issues intimately
> involved in the substance of enforcement of the
> patent right."

Id. (alterations in Aoki) (some citations and internal quotation marks omitted) (quoting Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362 (Fed. Cir. 2001)).  "For issues not unique to patent law, [the Federal Circuit will] apply the law of the regional circuit in which this appeal would otherwise lie."  Sanofi-Aventis Deutschland GmbH v. Genentech, Inc., No. 2012-1454, 2013 WL 1921073, at *3 (Fed. Cir. May 10, 2013) (citations and quotation

marks omitted).  Federal Circuit law applies to the issue of
whether federal patent law preempts a state law claim.
Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411 F.3d 1369, 1376
(Fed. Cir. 2005).

> It is well-established that
>
> [s]tate tort claims against a patent holder,
> including tortious interference claims, based on
> enforcing a patent in the marketplace, are
> "preempted" by federal patent laws, unless the
> claimant can show that the patent holder acted in
> "bad faith" in the publication or enforcement of
> its patent.  [Zenith Elecs. Corp. v. Exzec, Inc.,
> 182 F.3d 1340,] 1355 [(Fed. Cir. 1999)].  As the
> Supreme Court said long ago, "Patents would be of
> little value if infringers of them could not be
> notified of the consequences of infringement, or
> proceeded against in the courts.  Such action,
> considered by itself, cannot be said to be
> illegal."  Virtue v. Creamery Package Mfg. Co.,
> 227 U.S. 8, 37-38, 33 S. Ct. 202, 57 L. Ed. 393
> (1913).

800 Adept, Inc. v. Murex Sec., Ltd., 539 F.3d 1354, 1369 (Fed.
Cir. 2008) (some citations omitted).  In an appeal reviewing a
jury's verdict on claims of patent infringement and tortious
interference with business relationships, the Federal Circuit
stated:

> The issue in this case is whether Adept
> presented to the jury sufficient facts, if
> believed, that a reasonable jury could find for
> Adept on the issue of Targus's bad faith.  This
> "bad faith" standard has objective and subjective
> components.  Dominant Semiconductors SDN. BHD. v.
> Osram GMBH, 524 F.3d 1254, 1260 (Fed. Cir. 2008).
> The objective component requires a showing that
> the infringement allegations are "objectively
> baseless."  Globetrotter Software, Inc. v. Elan
> Computer Group, Inc., 362 F.3d 1367, 1375 (Fed.

Cir. 2004).  The subjective component relates to a
showing that the patentee in enforcing the patent
demonstrated subjective bad faith.  See id.
Absent a showing that the infringement allegations
are objectively baseless, it is unnecessary to
reach the question of the patentee's intent.  See
id.

Infringement allegations are objectively
baseless if "no reasonable litigant could
realistically expect success on the merits."
Prof'l Real Estate Investors, Inc. v. Columbia
Pictures Indus., Inc., 508 U.S. 49, 60, 113 S. Ct.
1920, 123 L. Ed. 2d 611 (1993); see also GP
Indus., Inc. v. Eran Indus., Inc., 500 F.3d 1369,
1374 (Fed. Cir. 2007); Globetrotter, 362 F.3d at
1375-76.  To prove at trial that Targus's actions
were objectively baseless, Adept was required to
offer clear and convincing evidence that Targus
had no reasonable basis to believe that its patent
claims were valid or that they were infringed by
Adept's customers.  See Golan v. Pingel Enter.,
Inc., 310 F.3d 1360, 1371 (Fed. Cir. 2002).
Because of the value placed on property rights,
which issued patents share, see 35 U.S.C. § 261
("[P]atents shall have the attributes of personal
property."); Consol. Fruit-Jar Co. v. Wright, 94
U.S. 92, 96, 24 L. Ed. 68 (1876) ("A patent for an
invention is as much property as a patent for
land."); Kearns v. Gen. Motors Corp., 94 F.3d
1553, 1555 (Fed. Cir. 1996) ("By statutory and
common law, each patent establishes an independent
and distinct property right."), and in light of
the underlying jurisprudential basis for the bad
faith standard, rooted as it is in Supreme Court
cases and Constitutional principles, see
Globetrotter, 362 F.3d at 1375-77, a party
attempting to prove bad faith on the part of a
patentee enforcing its patent rights has a heavy
burden to carry.

Id. at 1370.

The requirements to plead bad faith in order to survive

a motion to dismiss on preemption grounds are not as well

established.  This district court examined the preemption issue

22

in VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co. and
ruled that the counter claimant's state law claims of "tortious
interference with existing contracts and prospective business
advantage", "unfair methods of competition in violation of Haw.
Rev. Stat. § 480-2", and "unfair and deceptive trade practices in
violation of Haw. Rev. Stat. § 481A-3" were preempted under the
bad faith standard.  Civ. No. 11-00288 ACK-RLP, 2011 WL 6820122,
at *12-13 (D. Hawai`i Dec. 27, 2011).  In that case, the district
court ruled that the state law claims failed to the extent that
they were derivative of the insufficiently pled claim for
inequitable conduct.  Id. at *12.  Apart from the inequitable
conduct claim, the state law claims were based solely on
"allegations that VDF informed other parties of its intellectual
property and associated rights." Id. at *13.  The district court
concluded that "[t]his conduct, as pleaded in the counterclaim,
does not constitute bad faith, either objectively or
subjectively."  Id.  VDF FutureCeuticals involved a "letter from
VDF's counsel to XOWii, LLC . . . that merely 'draws [the
recipient's] attention to' 35 U.S.C. § 154(d), which provides
that a 'patent shall include the right to obtain a reasonable
royalty' from an infringer of an ultimately issued patent who
'had actual notice of the published patent application.'" Id. at
*8 (some alterations in VDF FutureCeuticals) (quoting 35 U.S.C.
§ 154(d)(1)).

23

In the instant case, the Complaint alleges that SwimWays: sent a letter to TIG on August 7, 2012 claiming that certain TIG products violated SwimWays's '422 Patent and trade dress; [Complaint at ¶ 12;] failed to respond to the 9/18/12 TIG Letter, which asserted that SwimWays's patent infringement and trade dress allegations were meritless; [id. at ¶ 30, Exh. F (9/13/12 letter);] and sent the 11/28/12 SwimWays Letters to certain TIG customers advising them of SwimWays's rights and warning them of the possible consequences of purchasing products that infringed upon SwimWays's rights [id. at ¶ 33, Exh. G (11/28/12 letter to KTA)].  TIG alleges additional actions by HIC, Corish, and Sur, and TIG argues that these actions should be imputed to SwimWays because HIC, Corish, and Sur are SwimWays's distributors and agents in Hawai`i.  [Id. at ¶ 61.]  TIG also alleges that SwimWays "acted in concert and conspired" with HIC, Corish, and Sur.  [Id. at ¶ 24.]

Other than the facts that HIC is a SwimWays distributor and Corish and Sur are HIC employees, the Complaint presents no factual allegations to support the alleged conspiracy.[3]  In fact, the Complaint acknowledges that SwimWays denied responsibility

---

[3] TIG argues that Corish stated in his scheduling conference statement that SwimWays provided information about TIG's alleged infringement to HIC.  This Court, however cannot consider such documents in a motion to dismiss without converting the motion to a motion for summary judgment.  See Yamalov, 2011 WL 1875901, at *7 n.7.  This Court declines to do so.

for and knowledge of Corish's actions.  [<u>Id.</u> at ¶¶ 26-27, Exh. B
(8/20/12 letter), Exh. C (8/22/12 letter).]   The Complaint also
acknowledges that the 11/28/12 SwimWays Letters did not
specifically identify TIG.  [<u>Id.</u> at ¶ 35.]   Further, while the
Complaint alleges that SwimWays's claims of patent and trade
dress infringement were "baseless" and the Complaint states that
TIG informed SwimWays that TIG believed the claims were
"meritless[,]" [<u>id.</u> at ¶¶ 24, 30,] this alone is not enough to
allege subjective bad faith on the part of SwimWays.

        This Court concludes that TIG has failed to set forth
sufficient allegations to raise a plausible claim that SwimWays
directed, or was otherwise responsible for, the actions of HIC,
Corish, and Sur.  Without such a connection, the allegations of
the Complaint do not sufficiently plead bad faith, either
subjectively or objectively, by SwimWays.  This Court therefore
CONCLUDES that, to the extent TIG's claims against SwimWays are
based upon SwimWays's actions relating to SwimWays's patent
rights, TIG's claims are preempted by federal patent law.  <u>See</u>
<u>Zenith Elecs.</u>, 182 F.3d at 1355.  The SwimWays Motion is GRANTED
insofar as this Court DISMISSES the portions of Counts V, VI, and
VII based on SwimWays's actions allegedly taken in a good faith
attempt to enforce SwimWays's patent rights.

        TIG, however, asserts that it already has further
information which it can incorporate into its claims to buttress

the allegations of bad faith.  Insofar as it appears that TIG can

cure the defects in its claims by amendment, see Harris, 573 F.3d

at 737, the dismissal is WITHOUT PREJUDICE.

## II. **Enforcement of SwimWays's Trade Dress Rights**

The SwimWays Motion also asks this Court to dismiss the

portions of Counts V, VI, and VII which are based upon actions

that SwimWays allegedly took in a good faith attempt to protect

its trade dress rights.  SwimWays contends that a conditional

privilege exists for the protection of trade dress rights that is

similar to the conditional privilege for actions to protect

patent rights.  The TIG Motion asks this Court to dismiss

SwimWays's Counterclaim Counts II and III, which allege that TIG

committed trade dress infringement and unfair competition.  TIG

asserts that Counterclaim Counts II and III are insufficiently

pled.

Whether federal trade dress law preempts TIG's state

law claims is not as clear as the question of patent law

preemption.  This Court therefore begins its analysis with the

general legal principles of trade dress protection and the

prosecution of trade dress infringement claims.

### A. **General Principles**

Trade dress protection under federal law is
designed to promote competition.  TrafFix Devices,
Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 28, 121
S. Ct. 1255, 149 L. Ed. 2d 164 (2001).  Such
protection, however, "must subsist with the
recognition that in many instances there is no

26

prohibition against copying goods and products."
Id. at 29, 121 S. Ct. 1255.  Rather, "[t]he
physical details and design of a product may be
protected under the trademark laws only if they
are nonfunctional. . . ."  Clamp Mfg. Co. v. Enco
Mfg. Co., 870 F.2d 512, 515 (9th Cir. 1989)
(citing Vuitton Et Fils S.A. v. J. Young Enters.,
644 F.2d 769, 772 (9th Cir. 1981)).  Were a
product's functional features protected, then "a
monopoly over such features could be obtained
without regard to whether they qualify as patents
and could be extended forever."  Disc Golf Ass'n
v. Champion Discs, Inc., 158 F.3d 1002, 1006 (9th
Cir. 1998) (citation omitted).

Under the Lanham Act, Congress imposes a
presumption of functionality, and plaintiff bears
the burden of proving non-functionality.  15
U.S.C. § 1125(a)(3) ("In a civil action for trade
dress infringement under this chapter for trade
dress not registered on the principal register,
the person who asserts trade dress protection has
the burden of proving that the matter sought to be
protected is not functional.").  Therefore,
Tractel, as the "one who seeks to establish trade
dress protection must carry the heavy burden of
showing that the feature is not functional, for
instance by showing that it is merely an
ornamental, incidental, or arbitrary aspect of the
device."  TrafFix, 532 U.S. at 30, 121 S. Ct.
1255.  In cases of product design, the Supreme
Court has counseled "that design, like color, is
not inherently distinctive."  Wal-Mart Stores,
Inc. v. Samara Bros., 529 U.S. 205, 212, 120 S.
Ct. 1339, 146 L. Ed. 2d 182 (2000).

In conducting the functionality analysis,
which is a question of fact, we must be mindful
that "'[f]or an overall product configuration to
be recognized as a trademark, the entire design
must be nonfunctional.'"  Leatherman Tool Grp. v.
Cooper Indus., 199 F.3d 1009, 1012 (9th Cir. 1999)
(quoting Clamp, 870 F.2d at 516); see also Tie
Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 786
(9th Cir. 2002) (foreclosing a finding of
nonfunctionality where "'the whole is nothing
other than the assemblage of functional parts'"
(quoting Leatherman, 199 F.3d at 1013)).  "De

27

> facto" functionality means that the "design of a
> product has a function, i.e., a bottle of any
> design holds fluid," whereas "de jure"
> functionality means that the "product is in its
> particular shape because it works better in this
> shape." Leatherman, 199 F.3d at 1012 (citation
> omitted).  "[B]efore an overall product
> configuration can be recognized as a trademark,
> the entire design must be arbitrary or non de jure
> functional." Id.

Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., 668 F.3d 677, 683

(9th Cir. 2012) (alterations in Secalt).

"Trade dress protection applies to 'a combination of

any elements in which a product is presented to a buyer,'

including the shape and design of a product." Art Attacks Ink,

LLC v. MGA Entm't Inc., 581 F.3d 1138, 1145 (9th Cir. 2009)

(quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair

Competition § 8:1, at 8-3 (4th ed. 2008)); see also, e.g., Kohler

Co. v. Moen Inc., 12 F.3d 632, 641 (7th Cir. 1993) ("We have

defined 'trade dress' as the total image of a product, including

such features as size, shape, color or color combinations,

texture, graphics, or even particular sales techniques."

(citations and some internal quotation marks omitted)).

**B.    Trade Dress Infringement**

> To prove trade dress infringement, a plaintiff
> must demonstrate that (1) the trade dress is
> nonfunctional, (2) the trade dress has acquired
> secondary meaning, and (3) there is a substantial
> likelihood of confusion between the plaintiff's
> and defendant's products. Disc Golf Ass'n v.
> Champion Discs, 158 F.3d 1002, 1005 (9th Cir.
> 1998).  Our analysis here centers on the second
> factor: whether Art Attacks's trade dress has

acquired secondary meaning.

> To succeed on a trade dress infringement
> based on product design, the plaintiff must show
> that her design has attained secondary meaning.
> Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S.
> 205, 214, 120 S. Ct. 1339, 146 L. Ed. 2d 182
> (2000).  "Secondary meaning can be established in
> many ways, including (but not limited to) direct
> consumer testimony; survey evidence; exclusivity,
> manner, and length of use of a mark; amount and
> manner of advertising; amount of sales and number
> of customers; established place in the market; and
> proof of intentional copying by the defendant."
> Filipino Yellow Pages, Inc. v. Asian Journal
> Publ'ns, Inc., 198 F.3d 1143, 1151 (9th Cir.
> 1999).  To show secondary meaning, a plaintiff
> must demonstrate "a mental recognition in buyers'
> and potential buyers' minds that products
> connected with the [mark] are associated with the
> same source."  Japan Telecom v. Japan Telecom Am.,
> 287 F.3d 866, 873 (9th Cir. 2002) (internal
> quotation omitted).

Id. (alteration in Art Attacks).

This Court acknowledges that, in light of the
requirements to prove a trade dress infringement claim, it is a
close question whether SwimWays's Counterclaim pleads plausible
claims for trade dress infringement.  This Court, however,
concludes that SwimWays has sufficiently pled Counterclaims
Counts II and III to provide TIG with notice of SwimWays's
claims.  TIG has raised significant questions regarding the issue
of whether SwimWays has trade dress rights in the products at
issue in Counterclaims Counts II and III, but such fact-intensive
inquires are more appropriate when TIG tests the merits of
SwimWays's claims on summary judgment or at trial.  This Court

29

therefore DENIES the TIG Motion.

This Court now turns to the issue of whether federal trade dress law preempts TIG's state law claims based upon actions that SwimWays allegedly took while attempting to protect SwimWays's trade dress rights.

### C.   **Preemption of State Law Claims**

Based on this Court's review of the relevant case law, this Court concludes that federal trade dress law may preempt TIG's state law claims, but this Court cannot rule on the preemption issue until after it determines the scope of SwimWays's trade dress rights.

For example, the Federal Circuit has stated:

> That is not to say that patent law principles have no preemptive effect on state law claims simply because those claims are for trade dress protection. If, under the rubric of "trade dress" protection, state law should purport to give Midwest the right to exclude others from using a feature that confers a significant non-reputation-related market advantage over its competitors, the state law cause of action would conflict with federal patent law principles and be preempted. See Bonito Boats[, Inc. v. Thunder Craft Boats, Inc.], 489 U.S. [141,] 167, 109 S. Ct. 971, [103 L. Ed. 2d 118,] 9 U.S.P.Q.2d [1847,] 1858-59 [(1989)]; Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1580, 36 U.S.P.Q.2d 1417, 1423 (Fed. Cir. 1995). The central question, as under the Lanham Act, is whether the feature for which trade dress protection is asserted is functional.
>
> Even if curved winch posts are found to be a functional feature in the trailers claimed in the '261 patent, Midwest may still be entitled to claim trade dress protection in its particular design. Midwest contends that it is not seeking

30

protection for all curved winch posts, but only
for the particular curved winch post design that
it uses as its trade dress.  If that particular
design is sufficiently distinctive to serve as a
designation of source and if the protection of
that particular design does not result in a
meaningful restriction on Karavan's ability to
compete in the market, either before or after the
expiration of the '261 patent, then Midwest's
state law claims, as well as its Lanham Act claim,
would not be barred by any overriding federal
policy.

In sum, the fact that Midwest's patent
discloses and claims a trailer having a curved
winch post does not necessarily mean that Midwest
cannot assert trade dress rights in the particular
curved winch post design that it uses in its
trailers.  In order to determine whether Midwest
enjoys trade dress rights, the district court must
determine whether Midwest's winch post design is
functional, and whether Midwest has satisfied the
other requirements for protection under the Lanham
Act and Iowa state trademark law.

Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356,

1365 (Fed. Cir. 1999), *abrogated on other grounds by* TrafFix

Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23 (2001).

This Court agrees with the reasoning in Midwest

Industries.  If this Court concludes that SwimWays had

protectable trade dress rights in the products at issue in TIG's

Complaint, SwimWays was entitled to take reasonable measures to

enforce those rights.  Any state law claims arising from the

actions that SwimWays took in the reasonable protection of its

trade dress rights would be preempted by federal trade dress law.

Thus, for the same reasons as those set forth in Midwest

Industries, this Court DENIES the SwimWays Motion as to the

portions of Counts V, VI, and VII based on SwimWays's actions relating to the enforcement of SwimWays's trade dress rights. The denial is WITHOUT PREJUDICE to the filing of a new motion to dismiss if this Court rules in SwimWays's favor on SwimWays's trade dress infringement claims.

## III. __Joinders__

HIC and Sur each filed "a joinder of simple agreement" in the SwimWays Motion.  See Local Rule LR7.9.[4]  Insofar as HIC and Sur have merely stated that they agree with SwimWays that SwimWays is entitled to dismissal of TIG's claims against SwimWays, this Court GRANTS HIC's joinder and Sur's joinder. This Court emphasizes that, at the present time, there are no issues before this Court regarding TIG's claims against HIC, Sur,

---

[4] Local Rule 7.9 states, in pertinent part:

> Except with leave of court based on good cause, any substantive joinder in a motion or opposition must be filed and served within seven (7) days of the filing of the motion or opposition joined in. "Substantive joinder" means a joinder based on a memorandum supplementing the motion or opposition joined in.  If a party seeks the same relief sought by the movant for himself, herself, or itself, the joinder shall clearly state that it seeks such relief so that it is clear that the joinder does not simply seek relief for the original movant.  A joinder of simple agreement may be filed at any time. . . .

HIC and Sur each filed a joinder on May 13, 2013, almost two months after the filing of the SwimWays Motion.  Neither joinder contains a substantive memorandum, and neither joinder expressly requests the same relief for the joining party that SwimWays requested in the SwimWays Motion.

and Corish.  This Court expresses no opinion, and makes no ruling, regarding the merits of those claims.

## <u>CONCLUSION</u>

On the basis of the foregoing, the SwimWays Motion to Dismiss, filed March 18, 2013, is HEREBY GRANTED IN PART AND DENIED IN PART, and the TIG Motion, filed April 1, 2013, is HEREBY DENIED.  Specifically, the SwimWays Motion is GRANTED insofar as the portions of Counts V, VI, and VII based on SwimWays's actions allegedly taken in a good faith attempt to enforce SwimWays's patent rights are HEREBY DISMISSED WITHOUT PREJUDICE.  The SwimWays Motion is DENIED in all other respects.

This Court GRANTS TIG leave to file a First Amended Complaint consistent with the terms of this Order.  TIG must file its First Amended Complaint by no later than **July 23, 2013**.  This Court CAUTIONS TIG that, if it fails to file its First Amended Complaint by **July 23, 2013,** the claims which this Order dismissed without prejudice may be dismissed with prejudice.  Further, if TIG's First Amended Complaint fails to cure the defects identified in this Order or adds new parties, claims, or theories of liability, this Court may dismiss those claims with prejudice. If TIG wishes to add new parties, claims, or theories of liability, TIG must comply with Fed. R. Civ. P. 15 and the current scheduling order.

IT IS SO ORDERED.

33

DATED AT HONOLULU, HAWAII, June 21, 2013.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

THE ISLAND GROUP, INC. V. SWIMWAYS CORPORATION, ET AL; CIVIL NO.
13-00094 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT SWIMWAYS CORPORATION'S MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION TO DISMISS COUNTS II AND III OF DEFENDANT
SWIMWAYS CORPORATION'S COUNTERCLAIM